## FETTE v. LANE.

### No. 18,264; September 21, 1894.

#### 37 Pac. 914.

**Mortgage on Crops—Notice of Prior Mortgage.**—Plaintiff took a mortgage on certain crops as security for a loan, and subsequently defendant took a mortgage on the same crop for seed furnished, and to secure future advances. Plaintiff's mortgage was not recorded. Held, that a finding, on conflicting evidence, that defendant had notice of plaintiff's mortgage before making the advances on the second mortgage, would not be disturbed.

**Chattel Mortgage.**—An Unrecorded Mortgage of Personal property is valid against a subsequent mortgagee with notice.[1]

**Mortgage of Crops—Prior Unrecorded Mortgage.**—Where defendant's second mortgage for seed furnished was made before he had notice of plaintiff's prior unrecorded mortgage on the same crops, defendant has a prior lien to the extent of the seed furnished, but cannot enforce against the plaintiff liens for advances furnished the mortgagor after notice of the first mortgage.

**Mortgage of Crops.**—In an Action by the First Mortgagee of crops to recover the amount of his lien from a second mortgagee, who has sold them, one of the mortgagors may testify as to a statement by plaintiff that it was understood that the crops should be sent to defendant subject to plaintiff's lien, in order to rebut an allegation that plaintiff had surrendered his lien.

**Mortgage of Crops.**—A Finding That Barley Subject to Mortgages to plaintiff and defendant was to be stored by defendant in plaintiff's name, that he stored it in his own name, that plaintiff's demand of enough to secure his claim was not complied with, and that the barley was sold by defendant, and the proceeds retained by him, shows a conversion of the barley.

APPEAL from Superior Court, San Joaquin County; Ansel Smith, Judge.

Action by F. Fette against Frank E. Lane to recover on a note secured by mortgage on crops sold by defendant under a second mortgage. Judgment for plaintiff and defendant appeals. Affirmed.

---

[1] **Cited** in Cardenas v. Miller, 108 Cal. 252, 49 Am. St. Rep. 84, 41 Pac. 472, where the legal attitude of a creditor is distinguished from that of a mortgagee in such a situation.

James H. & John E. Budd and Thompson & Paulsell for appellant; Nicol & Orr for respondent.

HAYNES, C.—This action was tried by the court. The findings, briefly stated, disclose the following facts: On March 31, 1892, O'Brien and Smith were indebted to plaintiff in the sum of $564, and on that day executed to him their promissory note for that sum, payable August 1, 1892, with interest, and on the same day executed to the plaintiff a "crop mortgage" to secure the same, upon a crop of barley then growing on lands therein described. Prior to that time O'Brien and Smith procured from defendant the seed for said crop, amounting to three hundred and thirty sacks, under an agreement to return two sacks of barley for each sack of seed; and on May 21, 1892, O'Brien and Smith executed to defendant a crop mortgage on the same crop previously mortgaged to plaintiff to secure to defendant the return of said two sacks for each one só furnished, and for the payment of such sums of money as defendant might advance to them, not exceeding $100. This mortgage further provided that the mortgagors were to care for and protect the crop while growing, and, when fit for harvesting, to harvest, thresh, clean and sack the same, and deliver it to the mortgagee, to be by him held and disposed of for the payment of the moneys thereby secured; and in default of either of said acts the mortgagee was authorized to enter and take possession and harvest, thresh and sack the same, and all expenses so incurred, including hauling, storing and delivery, were to be secured by the mortgage, and first paid; and for all these purposes the mortgagee was constituted the attorney in fact of the mortgagors, with power to sell and dispose of the same at such times and for such sums as he might deem proper. This mortgage was duly recorded on the day of its execution, but the prior mortgage to plaintiff was not recorded. It was further found by the court that, after the execution of the mortgage to the defendant, but before any advances or expenditures were made thereunder, the defendant was informed of the prior mortgage to the plaintiff; that, subsequent to the execution of said mortgage to defendant, and prior to the harvesting of the crop, it was agreed between plaintiff and defendant that when the crop should be harvested and sacked the whole of it should

be shipped to defendant at Stockton, and be by him stored in the name of the plaintiff, and held for the satisfaction of plaintiff's said claim; that with the consent of O'Brien and Smith the whole of the crop, amounting to four thousand five hundred and twenty-five sacks, was shipped to defendant, who stored the same in his own name; that thereafter plaintiff demanded that defendant turn over to him so much thereof as was necessary to secure the note held by plaintiff, but defendant refused to do so, and thereafter sold at private sale the whole thereof, amounting to $3,468.77, and received and appropriated the whole thereof to his own use; that no proceedings were taken to foreclose said mortgage, nor any notice of sale given; that the money so received by defendant was largely in excess of the sums due under both said mortgages and all sums expended in harvesting the barley, and that no part of plaintiff's note against O'Brien and Smith had been paid. One or two other facts found by the court will be noticed in another connection. Upon these findings judgment was entered for plaintiff for the amount due on said note, and the defendant appeals therefrom, and from an order denying his motion for a new trial.

The questions principally discussed are as to the sufficiency of the evidence to justify the findings. It could serve no useful purpose to discuss the evidence in detail. A few points only can be noticed. The finding that defendant had knowledge of plaintiff's mortgage before he made any advances or expenditures on account of the mortgaged property is justified by the evidence. The evidence is clear that he had such knowledge, but as to the precise time when such knowledge was obtained the evidence is conflicting. The finding of the court, therefore, cannot be disturbed.

That defendant made large advances to O'Brien and Smith, which he was not required to make under the terms of his mortgage, and which were not secured by it, even if plaintiff's mortgage had never existed, is clear from defendant's testimony. He said: ''Smith and O'Brien's account had exceeded the amount of my mortgage to such an extent that I thought I ought to be secure, and so attached the crop.'' The amount for which the attachment was issued appears from defendant's testimony to have been $1,236, and the evidence is sufficient to sustain the finding that he received from the sales of the

barley a sum of money largely in excess of the amounts secured by both mortgages. No judgment was taken in the attachment proceeding, and, after the barley was all delivered to defendant, the attachment was dismissed. Plaintiff claimed, and the court found, that an agreement was made between plaintiff and defendant to the effect that defendant should receive all the barley, and store it in plaintiff's name, to the end that his claim should be paid, thus giving defendant the opportunity of applying the remainder to the payment of his claim, this arrangement being assented to by Smith and O'Brien. Appellant contends that this finding is not supported by the evidence, but that, on the contrary, plaintiff agreed to take the barley, and pay defendant $1,700, and further to guarantee the payment of the harvesting expenses. The evidence shows that there were negotiations looking to the arrangement last above stated, but the two propositions appear to have been under consideration at the same time. That plaintiff made the offer to pay the $1,700 is conceded by him, but plaintiff wanted the barley stored at Sperry's warehouse; that, if it was not stored there, he was afraid he should have to pay storage twice; and the conclusion seems to have been arrived at which is stated in the finding of the court. The plaintiff testified further that he left his note and mortgage with defendant for collection, and that defendant told him to come "in a couple of days," and get his money; while defendant testified that he never agreed to assume plaintiff's obligation against Smith and O'Brien, "only that when I was paid he should be paid." It would be idle for us to attempt to reconcile these conflicts, and, not being able to do so, we cannot disturb the findings.

Appellant's counsel say in their brief that "the amount secured to Lane [the defendant] by the mortgage, exclusive of the insurance money, was $3,474.96, and the amount of sales $3,468.77, so that the amount received from sales was insufficient to pay the amount secured to be paid exclusive of insurance." The sum above stated is the entire indebtedness of O'Brien and Smith to defendant, except the insurance, and includes $1,236, which appears from the testimony of defendant to have been the amount for which the attachment was issued. As the attachment could not issue without an affidavit that the amount claimed was not secured by a mortgage or

other lien, the defendant cannot well insist that his whole claim is secured by his mortgage.

It is also insisted by appellant that, as plaintiff's mortgage was not recorded, it is void as against creditors and subsequent purchasers and encumbrancers in good faith and for value. Civil Code, section 1217, provides: "An unrecorded instrument is valid as between the parties thereto and those who have notice thereof." "The object to be attained by requiring the recording of mortgages of personal property is the same as that in providing for the registration of mortgages of real estate. The same general principles are alike applicable in each case": Berson v. Nunan, 63 Cal. 552.

As to the barley furnished by defendant for seed, defendant's subsequent mortgage, taken without notice of the prior unrecorded mortgage, is entitled to the first lien. It is not necessary to consider how far, and as to what expenditures, made after knowledge of plaintiff's mortgage, defendant's mortgage may be held to constitute a prior lien, since the mortgaged property exceeds the amount secured to both plaintiff and defendant under their respective mortgages, and hence the question of priority is unimportant. Nor could the attachment of the property by defendant, after notice of plaintiff's mortgage, affect his lien, even if the attachment had not been dismissed; but, if it were otherwise, the attachment having been discharged, no lien remained except those created by the mortgage. For the purposes of this decision it may be conceded that plaintiff expended nothing in harvesting the crop, and that defendant paid all the expenses, and that the expenses of harvesting and storing the crop were a prior lien under defendant's mortgage, for the result reached by the trial court would still be right, inasmuch as the other advances not required by the mortgage, and included in the attachment, are more than sufficient to satisfy plaintiff's lien.

As to the manner in which the barley was sold, we think the plaintiff does not stand in a position to question it. If enough had not been realized to satisfy plaintiff's lien after satisfying such part of defendant's lien as was prior to his, the question might be material. Both liens having been satisfied, the only parties interested in that question are Smith and O'Brien, and they are not in court. A discussion of the question is, therefore, not only unnecessary, but improper.

Smith, one of the mortgagors, called by plaintiff, was asked whether he, O'Brien, Fette and Lane had an understanding as to how and to whom the grain should be shipped. The witness answered: "Yes, sir. We had an understanding. Mr. Fette told me he had an understanding with Mr. Lane." Defendant objected to what Fette told the witness unless Lane was present. Counsel for plaintiff then stated they did not offer it to bind Mr. Lane, but to meet an allegation of a surrender of plaintiff's lien. The court overruled the objection, and the witness said: "We didn't have an understanding with Mr. Lane—at least I didn't—how to ship it. All the understanding I had was, Mr. Fette told me that he had an understanding with Mr. Lane to ship the barley to Mr. Lane in Mr. Fette's name." We think the evidence was competent for the purpose for which it was introduced, and that the court properly refused a motion to strike it out. It was not evidence against Lane to show that he had assented or agreed that the barley should be shipped or stored in plaintiff's name, but was competent to show that Fette still claimed a right under his mortgage, and had not, as was alleged, abandoned his lien.

It is also contended that there was no conversion by defendant. But the finding that the barley was to be stored by defendant in plaintiff's name, that he stored it in his own name, that plaintiff demanded a delivery of so much thereof as would secure his claim, that such demand was not complied with, and that defendant sold the barley and retained the proceeds, comes so near to showing a conversion that Chitty could not have discovered the difference. Counsel's contention, if based on their construction of the evidence, as was doubtless intended, might lead to a different conclusion.

After a careful review of the evidence and the arguments of counsel, it must be said that, wherein there is any doubt of the correctness of any of the findings, the testimony is so conflicting that they must be permitted to stand. Nor can we even say that upon the evidence we would have made different findings. We advise that the judgment and order appealed from be affirmed.

We concur: Searls, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.